FILED
2026 Sep-21 PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**KEANU WALLACE,**
Plaintiff,

**v.**

**OFFICER CHATMAN, et al.,**
Defendants.

**Case No. 1:25-cv-611-CLM**

# MEMORANDUM OPINION

Plaintiff Keanu Wallace was a federal inmate housed at FCI Talladega. Wallace sued Officer Quintavius Chatman, a BOP correctional officer, for allegedly attacking Wallace unprovoked while Wallace was in his cell waiting for roll call. (Doc. 1). Wallace's complaint raised three claims against Chatman: (1) an Eighth Amendment excessive force claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (2) a state-law claim for assault and battery; and (3) a state-law claim of wantonness. Under the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"), the United States filed a notice that it should be substituted as Defendant for Wallace's state-law claims. (Doc. 14). Chatman moves to dismiss Wallace's *Bivens*' claim, and the United States moves to dismiss Wallace's state-law claims. (Doc. 15).

For the reasons stated within, the court **GRANTS** Chatman's motion and **DENIES WITHOUT PREJUDICE** the United States' motion. The court requires further briefing from the parties on Wallace's challenge to the United States' Westfall Act certification before the court can rule on whether Wallace's state-law claims are subject to dismissal under the Federal Tort Claims Act ("FTCA").

## BACKGROUND

### A. Statement of the Alleged Facts

On April 22, 2023, Wallace was housed at FCI Talladega. (Doc. 1, ¶ 6). Chatman was acting as a patrol officer in Delta B Unit. (*Id.*, ¶ 7). Around 9:55 am, Wallace was inside his cell in Delta B Unit awaiting roll call. (*Id.*, ¶ 8). Chatman approached Wallace's cell, called Wallace names, and said he was going to "beat [Wallace's] ass." (*Id.*, ¶ 9). Wallace responded that he "didn't have time for this" and that he just wanted to serve his time so that he could be released from prison. (*Id.*, ¶ 10).

Wallace then turned his back to walk away from Chatman. (*Id.*, ¶ 11). Chatman rushed Wallace and began choking him saying, "What you said? Talk that shit now." (*Id.*, ¶ 12). Chatman also slammed Wallace onto the floor, punched him in the face, and stated that he would kill Wallace if he weren't at work. (*Id.*, ¶ 13). Someone then came into the cell and pulled Chatman off Wallace. (*Id.*, ¶ 14).

Wallace left his cell, went to the showers, rinsed his face, and returned to the cell for lockdown. (*Id.*, ¶ 16). When Wallace returned to the cell, Chatman closed and locked the door and falsely radioed that he had been attacked by an inmate. (*Id.*, ¶ 17). As a result of the attack, Wallace sustained a 0.5cm length laceration to the left side of his face with scratches and abrasions to the right side of his neck. (*Id.*, ¶ 18). Wallace also verbally complained about head and neck pain. (*Id.*, ¶ 19).

### B. Procedural History

Wallace filed his complaint on April 22, 2025. (Doc. 1). On July 29, 2025, a summons issued to Officer Chatman was returned executed. (Doc. 3). But Officer Chatman did not respond to Wallace's complaint by the August 14, 2025, deadline. So on October 2, 2025, the Clerk of Court granted Wallace's application for clerk's entry of default. (*See* Docs. 5 & 6). That same day, the United States Attorney's Office for the Northern District of Alabama entered a notice of appearance, asserting that Wallace had failed to properly serve Chatman and explaining that the Department of Justice had recently approved Chatman's request for the U.S. Attorney's Office to represent him in this

action. (Doc. 8).[1] The U.S. Attorney's Office also requested that the court stay this case during the 2025 government shutdown. (*Id.*).

The court granted the motion to stay. (Doc. 9). A month later, Chatman moved for the court to lift the stay. (Doc. 11). The court granted Chatman's motion and gave him until on or before January 19, 2026, to file an answer or responsive pleading. (Doc. 12).

On January 16, 2026, the United States told the court that under the Westfall Act it was substituting itself as Defendant on Wallace's state-law tort claims against Chatman. (*See* Doc. 14 (citing 28 U.S.C. § 2679(d)(1)) Attached to the notice was a certification from Prim Escalona, the United States Attorney for the Northern District of Alabama, stating that she had read the complaint and determined that based on the information she had about the alleged incident "Defendant Quintavius Chatman was acting within the scope of his employment with the Federal Bureau of Prisons at the time of the incident out of which the claims arose." (Doc. 14-1).

Both Chatman and the United States move to dismiss Wallace's claims against them. (Doc. 15). Chatman moves to dismiss Wallace's *Bivens* claim on five grounds: (a) *Bivens* does not allow for official capacity claims against federal officers, (b) no *Bivens*' remedy exists for Wallace's claims, (c) Wallace failed to administratively exhaust his *Bivens*' claims, (d) Wallace is entitled to qualified immunity, and (e) Wallace failed to properly serve Chatman. The United States argues that the court should dismiss Wallace's state-law tort claims because (a) Wallace failed to comply with the FTCA's exhaustion requirement, and (b) Wallace has not served the United States.

[1] Because Chatman has appeared in this action, the court **SETS ASIDE** the clerk's entry of default (doc. 6).

## STANDARD OF REVIEW

Chatman's motion to dismiss is brought under Rule 12(b)(6), and the United States' motion to dismiss is brought under Rule 12(b)(1).

1. *Rule 12(b)(6)*: In reviewing Chatman's Rule 12(b)(6) motion, the ultimate question is whether Wallace's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Wallace to relief, then the court must deny Chatman's motion. If, however, the court accepts Wallace's pleaded facts as true, and Wallace still would not be entitled to relief, then the court must grant the motion.

2. *Rule 12(b)(1)*: Under Rule 12(b)(1), a party may seek dismissal for lack of subject matter jurisdiction. And a party may challenge jurisdiction under Rule 12(b)(1) as either a facial attack or a factual attack. A facial attack challenges whether the allegations of subject matter jurisdiction are sufficient, taking all allegations in the plaintiff's complaint as true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). On the other hand, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.*

Here, the United States raises a factual attack on this court's jurisdiction. When a party makes a factual attack, the court's ability to make findings of fact and weigh evidence depends on whether the attack implicates the merits of the plaintiff's claim. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). When the jurisdictional challenge implicates the merits of the claim, this court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* at 1261. But when the challenge does not implicate the merits of the claim, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The United States' jurisdictional challenge turns on whether Wallace properly exhausted his administrative remedies under the FTCA. So the court's jurisdictional inquiry does not implicate the merits of Wallace's claims, and the court may consider extrinsic evidence in reaching its decision.

## DISCUSSION

The court will discuss Chatman's motion and then discuss the United States' motion.

### I. *Bivens* Claims Against Chatman

Wallace brings an Eighth Amendment excessive force claim against Chatman under *Bivens*. Wallace concedes that he cannot bring official capacity *Bivens* claims against Chatman. So the court **GRANTS** Chatman's motion to dismiss any official capacity *Bivens* claims brought against him and addresses only the individual capacity *Bivens* claims below.

In *Bivens*, the Supreme Court recognized an implied cause of action against federal officers for certain Fourth Amendment violations. 403 U.S. at 397. The Court later extended *Bivens* to two other contexts: (1) gender discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249–49 (1979), and (2) deliberate indifference to serious medical needs under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*— represent the only instances in which the [Supreme Court] has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Thus, to prevail on his *Bivens* claim, Wallace must show that (a) his claims are either analogous to the claims the Supreme Court has previously recognized under *Bivens*, or (b) if the case presents a new *Bivens* context, that Chatman violated a clearly established constitutional right, there are no other remedies available, and that no special factors counsel against extending *Bivens*. *Id.* at 135–36. As explained below, the Supreme Court has recently held that Eighth Amendment excessive force claims against prison officials present a new *Bivens* context and "special factors counsel against recognizing an implied *Bivens* cause of action for" these types of alleged constitutional violations. *See Goldey v. Fields*, 606 U.S. 942, 944 (2025) (quotations omitted). So Wallace cannot maintain an Eighth Amendment excessive-force *Bivens* claim against Chatman. *See id.* at 943, 945.

**Step One (New Context)**: A new *Bivens* context is a context that is "meaningfully different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up). And "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). So although *Carlson* allows federal inmates an implied right of action against prison officials for Eighth Amendment deliberate indifference to serious medical needs claims, the Supreme Court has determined that Eighth Amendment excessive force claims against prison officials present a new *Bivens* context. *See Goldey*, 606 U.S. at 944–45.

**Step Two (Special Factors)**: Because Wallace's excessive force claims present a new context, the court must decide whether any special factors—such as encroachment on other branches of government or areas covered by existing federal regulation—should cause the court to hesitate to extend the *Bivens* remedy to Wallace's claims. *See Ziglar*, 582 U.S. at 136–37. Unfortunately for Wallace, the Supreme Court has determined that "special factors counsel against recognizing an implied *Bivens* cause of action for Eighth Amendment excessive-force violations." *Goldey*, 606 U.S. at 944–45.

As the Court explained, "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." *Id.* at 944. And "extending *Bivens* to allow an Eighth Amendment claim for excessive force could have negative systemic consequences for prison officials and the inordinately difficult undertaking of running a prison." *Id.* (quotations omitted). Plus, "alternative remedial procedures" already exist "for aggrieved federal prisoners." *Id.* And though Wallace argues that "the administrative framework that might otherwise serve as a mitigating factor did not function as intended in this case," (doc. 19, p. 11), whether BOP's Administrative Remedies procedure "is accessible or otherwise adequate to redress [Wallace's] grievances is, for better or worse, irrelevant to [the court's] analysis," *Carrin v. Strong*, 182 F.4th 1351, 1363 (11th Cir. 2026).

Thus, Wallace cannot bring an Eighth Amendment excessive-force *Bivens* claim against Chatman, and the court will **DISMISS** this claim **WITH PREJUDICE**.

## II. State-law Tort Claims against the United States

The United States asks the court to dismiss Wallace's state-law tort claims of assault and battery and wantonness for failure to comply with the FTCA's exhaustion requirements. As the United States argues, "[a] federal court does not have jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency within two years from the time the claim accrues accompanied by a claim for money damages in a sum certain." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (cleaned up).

Wallace doesn't dispute that he failed to exhaust his state-law claims under the FTCA or that this court lacks jurisdiction over FTCA claims when an administrative claim wasn't filed with the appropriate agency. (*See* Doc. 19, p. 19). But Wallace asserts that his claims for assault, battery, and wantonness do not fall within the scope of the FTCA because he brought these claims against Officer Chatman individually and the United States' Westfall Act certification was improper.

Under the Westfall Act, "[w]hen a federal employee is sued for wrongful or negligent conduct," the Attorney General may "certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn v. Haley*, 549 U.S. 225, 229–30 (quoting 28 U.S.C. § 2679(d)(1), (2)). Upon certification, the plaintiff's claims are considered "an action against the United States" under the FTCA, and the United States is substituted as the party defendant. 28 U.S.C. § 2679(d)(1). But the Attorney General's Westfall certification is subject to judicial review. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022). In conducting this de novo review, the court must decide whether under "the law of the state where the incident occurred," the federal employee's actions were within the scope of his employment. *See id.* "The question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of [each] case." *Bennett v. United States*, 102 F.3d 486, 489 (11th Cir. 1996). And the burden is on the plaintiff to prove that the federal employee acted outside the scope of his employment. *See Omnipol*, 32 F.4th at 1305.

The United States asserts that Chatman was acting within the scope of his employment because Wallace alleged in the parties' section of his complaint that "[a]t all times relevant to this action Defendant Chatman acted under the color of law and in the scope of his employment." (*See* Doc. 1, ¶ 2). Wallace disagrees and says that his factual allegations "describe malicious and sadistic conduct undertaken for personal reasons, not force applied in furtherance of the BOP's objectives." (Doc. 19, p. 20). In support of this argument, Wallace notes that he alleges that Chatman taunted him, threatened to "beat [his] ass," rushed him, choked him, slammed him to the floor, punched him in the face, and stated he would have killed Wallace if not at work. (*See id.* (citing Doc. 1, ¶¶ 9–15)).

But neither Wallace nor the United States has cited Alabama law or explained the standard Alabama courts apply to determine whether an intentional tort was committed within the scope of an employee's employment. As a result, the court finds that consideration of this issue would benefit from additional briefing. The court will thus **DENY WITHOUT PREJUDICE** the United States' motion to dismiss the state-law tort claims for failure to satisfy the FTCA's exhaustion requirement.[2] On or before **October 6, 2026,** Wallace and the United States must file supplemental briefs that answer these two questions:

> 1. What is the standard under Alabama law for determining whether an employee's intentional tort was within the scope of his employment?
>
> 2. Applying Alabama law to Chatman's alleged conduct, were each of Chatman's alleged acts within or outside the scope of Chatman's employment?

---

[2] The court also **DENIES WITHOUT PREJUDICE** the United States' motion to dismiss Wallace's state-law claims for inadequate service under Rule 12(b)(5). Whether the United States should have been served depends on, among other things, whether the Westfall Act certification was proper.

The parties' briefs cannot exceed 15-pages, double-spaced, 14-point font. Once the supplemental briefs are in, the court will decide whether the United States' Westfall Act certification is proper. If certification was proper, the court will dismiss Wallace's state-law claims under the FTCA's exhaustion requirement.

## CONCLUSION

For these reasons, the court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss (doc. 15). The court **GRANTS** Chatman's motion to dismiss Wallace's *Bivens* claim and will **DISMISS** the *Bivens* claim **WITH PREJUDICE**. The court **DENIES WITHOUT PREJUDICE** the United States' motion to dismiss Wallace's state-law tort claims. The parties have until on or before **October 6, 2026,** to file supplemental briefs that address whether the Attorney General's Westfall Act certification was proper.

The court will enter a separate order that carries out this ruling.

**DONE** and **ORDERED** on September 21, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE